**NEW PRODUCTS CORPORATION,**
Plaintiff,

v.

**OUTBOARD, MARINE & MANUFACTURING COMPANY, Defendant.**

No. 56 C 583.

United States District Court
N. D. Illinois, E. D.

Feb. 28, 1958.

Horton, Davis & McCaleb, Chicago, Ill., for plaintiff.

Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., for defendant.

PERRY, District Judge.

The above entitled cause having come on for trial upon the complaint and answer and proceedings had herein, and the Court having observed the witnesses and considered their testimony, and having examined the exhibits introduced at the trial, due consideration having been given thereto, and, further, having examined and considered briefs of counsel and having heard further oral argument of counsel, and having examined and considered objections of defendant to proposed Findings of Fact and Conclusions of Law submitted by plaintiff, and being fully advised in the premises, the Court finds the facts and states the conclusions of law as follows:

Findings of Fact

1.

This is a patent infringement action arising under the patent statutes of the United States.

2.

Defendant has a place of business in this district and division at which it has performed the acts charged to infringe claims 1, 3 and 5 of the patent in suit.

3.

Plaintiff owns Banker patent No. 2,-409,236 and all rights thereunder including the right to sue and to recover for past infringements thereof.

4.

Each of the claims in suit relates to a method of making a roller cage from a ring member by a series of manufacturing steps as set forth and defined in each of the claims.

**5.**

The defendant manufactures roller cages from ring members by a series of manufacturing steps, the step-by-step manufacture being illustrated in the advertisement, plaintiff's exhibit 1. It first makes a cylindrical metal ring. It next makes a circumferential groove therein by removing metal from the outer cylindrical face of the ring, leaving spaced-apart flanges at each side of the groove which are perpendicular to the ring axis. The defendant next, by a broaching operation, makes a series of equally spaced grooves around the ring which intersect the first groove axially of the ring, resulting in a series of equally spaced slots through the ring wall, each slot having spaced apart opposed faces. Cleaning, burring and similar operations are carried out during the manufacturing operation.

**6.**

The defendant's method of manufacturing roller cages is substantially the same, to produce substantially the same product, as the methods defined in each of claims 1, 3 and 5 of the patent in suit.

**7.**

The Banker patent has had substantial commercial use by others than the defendant,—particularly in automobile transmissions. Roller cages made in accordance with the claimed methods have been used in motor bus transmissions on vehicles operated by the Chicago Motor Coach Company and in heavy army vehicles such as self-propelled artillery weapons. Licenses under the Banker patent have been granted to two large manufacturing companies,—Borg-Warner Corporation and Allis Chalmers Manufacturing Company.

**8.**

The claims of the patent which are in issue (claims 1, 3 and 5) were not amended or altered during prosecution of the application therefor in the United States Patent Office.

**9.**

The prior art, as evidenced by patents which were introduced by the defendant, was before the Patent Office for its consideration during prosecution of the patent in suit.

**10.**

Oscar Banker, President of the plaintiff, testified as a witness and recounted the events which led up to his invention of the subject-matter of the claims in suit. Dated drawings, correspondence, and physical structures relating to such events were identified by him and corroborated his testimony and records as to subsequent commercial use of the methods of manufacture and structures made in accordance with such methods were identified by additional witnesses.

**11.**

Oscar Banker was a truthful witness and his testimony that the drawings (Plaintiff's exhibits 20, 31 and 34) were made on or prior to the dates they bear (December 5, 1936 and December 8, 1938) is believed by the court to be true.

**12.**

The methods of manufacture defined by the claims in suit are substantial improvements over the methods previously used and result in substantial economies of manufacture and sturdier and more efficient roller cages having greater bearing capacity than those of the prior art. These improvements in product result from the methods used in manufacture which are defined in the claims in suit. The methods of manufacture defined in the claims in suit are particularly valuable and useable in high quantity production of bearing cages which was not true of the prior art methods shown in the record.

**13.**

The defendant previously manufactured or purchased roller cages of the type described in the Robinson patent in suit No. 2,053,534, but it subsequently changed its method of manufacture of roller cages to that which it now uses and which is charged to infringe the patent in suit. Defendant concedes that the roller cages previously made by and for it under the Robinson patent are not now practical.

**14.**

The defendant presented evidence received subject to plaintiff's objection that it was immaterial, that the roller cages made by it are used with rollers so placed in the slots that they are free to slide axially therein and that the ends of the rollers do not, as used by defendant, abut against the faces of the peripheral flanges of the roller cages. Such roller cages are used by defendant on the crank shaft of outboard motors and when installed, the rollers are held against axial movement by bearing faces on the crank shaft.

**15.**

Defendant placed in evidence Hickling United States patent No. 2,267,863 and its British patent counterpart No. 508,-980. The United States patent to Hickling issued on an application filed January 13, 1939, and the British application, filed January 24, 1938, was not made public until July 10, 1939. All three such dates are later than the invention date in 1936 shown on the drawings made and identified by Mr. Banker (Plaintiff's exhibits 31 and 34).

**16.**

The revised production drawing (Plaintiff's exhibit 20) made by Mr. Banker on or prior to December 8, 1938, is evidence of a reduction to practice by Mr. Banker prior to the Hickling filing date in the United States.

**17.**

Defendant contends that the Hickling patent is entitled to an effective date of January 24, 1938,—the date the Hickling application was filed in England. It is plaintiff's contention that the Hickling British patent is not effective for purposes of anticipation prior to its publication date in Great Britain, July 10, 1939, and that regardless of its effective date, it is no different in disclosure than the Hickling United States patent and does not anticipate the claims in suit.

**18.**

During prosecution of the patent in suit, Hickling patent No. 2,267,863 was issued and Mr. Banker sought to engage in interference therewith, copying the claims thereof as claims 7, 8 and 9 of the Banker application. The Patent Office rejected this request on the ground that the Banker application differed from the Hickling patent in the subject-matter of its disclosure and that therefore Mr. Banker could not copy the claims of the Hickling patent. However, the Patent Office also held that claims 1, 3 and 5 of the patent in suit were allowable even though Banker could not copy the Hickling claims.

### Conclusions of Law

**1.**

The court has jurisdiction of this cause and of the parties hereto.

**2.**

Claims 1, 3 and 5 of Banker patent No. 2,409,236 are good and valid in law and are not anticipated by the prior art.

**3.**

The methods defined in claims 1, 3 and 5 of the patent in suit are practiced by defendant in its manufacture of the roller cages identified in Plaintiff's Exhibit 1 and other exhibits and said claims and each of them are infringed by the defendant.

**4.**

Defendant does not avoid infringement of the claims in suit by the manner in which it uses the products manufactured under the methods defined.

**5.**

Such variations as there may be in defendant's methods of manufacture from those defined in claims 1, 3 and 5 of the patent in suit are at most additions or improvements therein which do not depart in substance from the inventions claimed and do not avoid infringement thereof.

**6.**

Plaintiff is entitled to judgment against the defendant, granting an injunction to restrain further infringement of claims 1, 3 and 5 of the patent in

suit and ordering an accounting to determine the proper award to plaintiff in accordance with the statutory provisions and plaintiff is entitled to recover its costs herein.